Excuse me, the next case called for oral argument is ASSCME, Council 31 v. Ill. Labor Relations Board at all, 516-0046. Council? May it please the Court, my name is Stephen Jokic and I represent the Petitioner in this case, ASSCME, Council 31. The two cases you have in front of you today, 0046 and 0229, deal with some of the most fundamental principles of labor law under the Illinois Public Labor Relations Act. And 0046 deals with the principle that says you cannot hurt somebody for the act of going on strike. The facts in 0046 are not disputed. The parties were engaged in bargaining for a successor contract in the summer of 2015. And while they were engaged in bargaining, the state put out what is called an FAQ, Fast Answers to Questions. And in the FAQ, it indicated that if an employee was on strike for one day of a paywall period, that the employee would be liable for the entire insurance premium for that period. So, just to take an example, if I'm an employee and my paywall period goes from, say, April 2nd to two weeks from then, April 16th, and I go on strike after nine days of that paywall period. I've worked nine days, I strike the tenth day. The state proposes to make me pay your insurance premium for the nine days before that that you work, if you come back to work after that one day of strike. Similarly, if I go on strike at the beginning of the paywall periods, I go on strike yesterday, and then I come back to work today. I've made my point of being on strike for a day. The state says that even though I'm going to work for nine more days, I have to pay my insurance, not just my contribution of insurance, but the whole insurance bill for that whole two-week period of time. Now, if the state had in place a policy that said, if I strike at the end of the paywall period, I forfeit my salary for that whole paywall period. Or if they had in place a policy that says, if I strike at the first day of the paywall period, you come back and work the rest of the paywall period, I forfeit my salary. People would say, oh, of course, that can't be. That's an unfair labor practice. And that's exactly what this is. It's an action by the state that is completely disproportionate to the activity that is being taken. And that was the basis of the unfair labor practice charge that was filed in this case. Now, the state responded to the unfair labor practice charge, and it basically makes three different arguments. One argument they make is that they have the right to tell people what their policy is, and that so long as they're accurately describing their policy, it's not an unfair labor practice. And that relies on Section 10C of the Act, which allows an employer to say anything it wants so long as the statements don't contain a threat or promise of reprisal. And an argument to the bad is that the policy is illegal because it constitutes a reprisal against employees for engaging in a protected activity. And since the policy is illegal in and of itself, the publication of that policy is then protected by Section 10C of the Act. The cases relied on by the state deal with situations where what the employer was doing was legal in the very first instance, and the employer said, I'm going to do this legal thing. But here, what we're saying is that the thing that they proposed to do is illegal, and that is why they cannot publicize it in their FAQ. Now, the state also argues, well, we don't have to subsidize people while they're on strike. We don't have to pay you while you're on strike. And that is very true. If I'm not working, I'm not entitled to money for the day that I'm not working, and I'm not entitled to the benefits that I would have earned that day either if those benefits are paid on a daily basis, such as they are with salary and perhaps with insurance. But what we're arguing is that they're not entitled to punish me for days that I am working by doing something on a day that I am not working. Now, finally, they argue that there's an administrative group, that they can't parse out what will happen if there's a strike that doesn't match up with a payroll period exactly. It would be easy if we just decided to go on strike at the beginning of the payroll period and came back at the end of the payroll period, but strikes aren't like that. No one knows usually how long they're going to be when they start. And their administrative argument is, well, that would be hard for us to do. And that is really the nub of the case, because what the state is asking is for the board and the court to sanction an arrangement where they say it would be difficult for us to do this, and therefore we're entitled to penalize employees for the whole payroll period. And that really involves an issue of law. And that issue of law is, as the court put it in the Supreme Court case of Great Dane Trailers, whether this type of policy is inherently destructive to the rights of people under the Act. And it also involves an issue of fact. And that is, well, if you decide it's not inherently destructive and we go on to balance the harm to employees versus the administrative interests of the employer, you have to weigh those things. And the only time we knew about the state's justification for the policy was when we got the record on appeal. Because up until that time, the state's justifications are part of the investigative file. And because they're part of the investigative file, we don't know what administrative argument they're claiming. And so there is an issue of fact as to whether the administrative burdens of what they're doing are so great that they outweigh the right of people to strike free of reprisal. And what proof was put forward regarding the administrative burden? What they said is that it would be hard for us to figure out how to charge people. And the reason why on its face that makes no sense is that if you take the state health care benefit handbook, which is the document that they put out to tell people when they can get health care and when they can't get health care and what they have to pay, they have a specific provision in that handbook. It's attached to our opening brief. It's 829 of the appendix to our opening brief that deals with what happens if you miss 30 days or less of time due to either suspension or what they call dock days, days when you are absent or you're not getting paid. I run out of sick days, for example. And what the state does on an annual basis is it counts those number of days. So if I yell at my supervisor and I get a five-day write-off and then I run out of sick days later in the year and I end up being absent from work for 26 days, they'll bill me for my insurance. They'll keep track of it. If I don't get up to that magic level of 30, they won't bill me for that insurance. So I'm going to get to that point in a second. So you meant originally when you said you were meaning 30 days or more. 30 days or more. That's right, that's right. And so they keep track of that and they bill me for that. And it's like a per diem thing calculated? Yeah, they'll bill me for my... Yeah. What the policy says is that employees in dock or suspension status are eligible for the employer contribution for up to 30 days per fiscal year. Once the 30 days have been exhausted, employees are no longer eligible for the employer contribution and must pay 100% of the cost of the coverage for each applicable pay grade for which non-pay status occurs. So once I get over 30, if I miss another day, I have to pay my premium. Now, that is what led to the second set of issues in this case. And that is that they treat days missed due to mistrial different than they treat days missed due to either absence or days missed due to suspension. So if I punch my supervisor in the nose, but I've got a good reason so I didn't get fired. I only get a 29-day suspension. They pay for my insurance for that 29 days of my suspension. But if I do something perfectly legal, that is exercise my rights under the Public Legal Relations Act, they will penalize me for doing that perfectly legal thing. And that, again, is something that would coerce a reasonable employee when they're thinking about going out on strike. And that is why, under the case law, we think it is something that is inherently destructive for people's rights. And the fact that they can keep track of it in this one context, but say that they can't keep track of it in another context, is something where, if you're going to really evaluate that claim, you should have an evidentiary hearing. And that is why there was an issue of fact as well as an issue of law that should have justified the issuance of a complaint in this case. Now, the last piece of this case, actually it's the penultimate piece of this case. The penultimate piece of this case is the issue of whether they had a bargain about the statement contained in their FAQ. And, as I say, the state regularly, almost on an annual basis, puts out a benefit handbook. It doesn't put out any rules or regulations with respect to what people have to do under the State Group Insurance Act. But it does put out a benefit handbook. And that benefit handbook, if you go on the Internet, is available. And it'll contain a statement that says this is what defines what we do for the period of time that it covers. And that benefit handbook has nothing in it about what happens if you go on strike. Zero. It does have the provision that I just read to you that deals with dock and suspension time, e.g. situations where I am absent without pay or situations where I am absent because I have been suspended for less than 30 days. Excuse me. Will you explain to me what their argument is that it was available in the coding section that was, I guess, something that could be gotten from the FAQ? Apparently, I don't know this because you can't find it in the public domain. They have a system of coding people. And that's not available. I have looked. It wasn't available to us at the time of your bargaining. It's not contained in the benefit handbook. It's not in the rule or regulation. And so far as we know, it was applied once in a strike at a university. In 2004. And the only reason we know about that is because that is what they claimed to the agency when they were discussing coding. But we have no independent knowledge of it besides that claim. And our problem with that is that their official document is the benefit handbook. And if they want to negotiate something that's different than what's in the contract or what's in the benefit handbook, which are the things that define. And incidentally, there's a whole statute, the State Employment Group Insurance Act, that also makes no mention of what happens with strikes. Our argument is that they want to negotiate something that's different than what's in the law, in their handbook, in state regulation, that they have an obligation to bargain before they do that. And that was the essence of our duty to bargain argument for the agency. So what we are asking, and really all we can ask at this point, is that this case be remanded to the board. And the board told to issue a complaint on the theories that we raised in the ULP, i.e. Section 10A1 and Section 10A4 of the Public Benefit Relations Act. And we would hope that you would say something about the merits of the legal theory as well. Because, you know, obviously this is a matter of great importance. There is still no contract between the state and most of its employees. There may be a strike. We don't know. And certainly people would want to know what their rights and liabilities were if there was a strike. So I have a little bit of time on that. In the issuance of the complaint, the relief that you're asking for, could you be a little more specific on what the complaint might look like? I think the complaint should contain a paragraph that says that they issued the FAQ in the midst of contract negotiations. That they issued it without notice to or bargaining with the union. That the issuance of it without notice to or bargaining with the union made out in violation of Section 10A4 of the Act. And that the issuance of the, that the FAQ constitutes a threat of reprisal because it disproportionately penalizes engaging in protected activities such as a strike. And that that element of reprisal violates Section 10A1 of the Public Labor Relations Act. Now again, the way the statute is set up, those are allegations. The state would have a chance to answer those allegations. And then you would go on to the next phase, which is you have a trial before an administrative court judge. And it would not, that is certainly normal course of events before this agency. So I told you that when I addressed 10A4 that that was a penultimate issue. I don't think it would be a good idea for me to leave the courtroom without addressing the motions that the state brought with respect to judicial notice. And with respect to a motion to revamp this case. Because they have made an issue of whether the decision in this case was properly issued under the Open Meetings Act and whether it was a final decision. Now in the briefs in this case, nobody raised the issue of the court's jurisdiction. Nobody raised the issue of whether it was a final jurisdiction. And the practice of the agency for the entire time the agency has been in existence has been to have an open meeting, discuss a case, arrive at a ruling in the case. And then to issue a written decision weeks or days later that encompasses their oral ruling. We had another case with the state where what happened was immediately after the board discussed the decision in the open meeting. They discussed it on Tuesday. On Tuesday night, the state mailed a petition to review to the appellate court. This is before there was any written decision. And under section 11 of the Public Labor Relations Act, the board has to issue written findings for its decision to be filed. So naturally our response was, can they do that given the fact that there's no written decision? And we went off to the library and we discovered that there's a first district case, the Howe case. Where the court held that the written decision of the agency must be issued in open meeting as well as announced in open meeting. And it went on to furthermore that where the written decision was not issued in open meeting, nothing had happened that terminated the proceedings before the agency. And since the proceedings before the agency had not been terminated because there had been no valid written decision, the court did not have jurisdiction of the case. Now, under the Open Meetings Act, you have 60 days to challenge a decision that you say is in conflict with the act. And so it would be our position that since there was no challenge in this case within 60 days, that this court has jurisdiction over the decision that was issued by the board in January of 2016. I think that would create some tension with the first district's ruling in the Howe case. But the alternative, given the way that this agency has been acting for 30 years, would basically be to reopen every conceivable case that is ever issued from this agency. And I can't help but think that when you're considering how to exercise this court's power, that that's something that you have to take into account. So that's our position on that. And unless the panel has other questions about the first case, I'll sit down. I do have a question about this Howe case. If there is no written decision, is there an ability to, I guess the 60 days would be the ability to force the decision. I would say that that's right. I would say that that's right. I would say that that's when the statute starts to run. It's when you get the oral decision. If both parties sit on their hands, then there's, it seems like there is no decision. I mean, how do you, how do you, the way to force their hand is to at least file within 60 days. But on the other hand, if you don't file, nothing is final yet either. You know, I don't, in all honesty or matter, I don't have a clue. It's a problem. It's one of those things I never considered when I started out in this case and when we started out with what we had in the fourth district. And to be honest with you, I don't really have satisfactory resolution on it. Except for maybe the legislature to make it a little bit clearer what you're supposed to do in these types of situations. Is the Howe case cited in your brief? The Howe case is not cited in the brief. I can give you the citation to it. I didn't think I saw that. The citation is 2013, the last, first, 122446. 122446. 122446. Why don't you file a motion and supplement? I'd be happy to do that. And then council will grant you leave to respond. Thank you. How many days, Justice? And can you do it in 21 days? 21 days. That's fine, Your Honor. Okay, thank you. Thank you. 14 days to respond to it? 21 is fine. Thank you. Thank you. Counsel? May it please the Court. My name is Frank Jescha. I represent the Labor Relations Board. I'm going to take up the first 12 minutes and then counsel for CMS will take the last eight. So that's why I'm looking at my watch, not for any other reason. This Court should affirm the dismissal of Aspen's charge because the Board did not abuse its discretion when it determined that the evidence before it did not warrant a hearing on Aspen's charges, that CMS made a threat or unilaterally changed its health insurance payment policy for striking employees when it stated that policy, posted that policy online. Where had CMS put any employee on notice prior to the publication of this last FAQ? There was no evidence as to when employees were put on notice. Any document we could look at or an employee could look at? Not about notice. What the Board looked at is whether or not the policy existed. Because what Aspen was saying is that when CMS posted this policy in June of 2015, it promulgated a new policy at that time. And that by promulgating this new policy, that both constituted a threat and constituted a violation of Tenet 4 because they hadn't bargained over it. So what the Board said in its decision is it looked at the evidence about whether or not the policy was new or if it already existed, said there wasn't any evidence showing that it was new. And to the extent there was evidence on that issue, there were the pay plans showing that it had been in existence for a number of years and that it had been applied back in 2004. Now, the pay plans, that's the coding? Yeah, that's the CMS coding. That's what CMS gave to the Board in its response. And so when the Board looked at that, the Board said, well, this isn't a new policy. And so, therefore, on the threat question, the question is whether the employer's accurate statement of its preexisting policy constitutes a threat. And the standard that the Board applies in determining whether or not there's a threat. So if it's a policy that nobody is aware of, then it's still not a new policy? Well, I think that... It never had been implemented, correct? Well, evidence indicated that it had been implemented in the 2004 strike at Northeastern. At Northeast. Right. And the Board did recognize that that didn't involve any bargaining units represented by AFSCME, but found that that evidence was still relevant to show whether or not it existed because that's what the Board's decision boiled down to, is this a new policy? Because if it's not a new policy, if CMS is just explaining what its policy is and has been, then that's not a threat, that's something that's protected under Section 10C because 10C allows employers and employees to engage in open communication, everybody benefits from that process, so you wouldn't have a threat in that situation. And then it resolved... How is it open communication if they have no awareness of it being a policy? Well, the FAQ posting was the open communication of it. It was saying, you know, this is our policy, this is what it always has been. And so, therefore, that posting itself didn't rise to the level of the threat under Section 10C. Where would one outside of the coding agency, the coding people, find this policy? For example, opposing counsel. Well, there wasn't any evidence to that effect before the Board. You're saying they don't have to have notice, which is what you're saying essentially. They don't have to be aware of it if you can prove that it existed. Well, under the threat analysis, yes. I mean, because there are different unfair labor practices charges that could be made. And so there's a little bit of distinction on the 10A4 argument about the CMS's duty to bargain, where AFSCME has argued this notice issue on appeal, you know, that they didn't give an adequate notice. But the Board never even considered that issue because the way the issue that was presented to the Board was, did CMS issue a new policy in June 2015? The Board looked at the evidence and said, well, the only evidence about whether it's new or not is that it's not new. It's been around for a while. And so, therefore, it's not new. That takes care of it. But doesn't new mean, with respect to this, to AFSCME? Well, it would be with respect to the employees who are affected by it. So, but going as a follow-up to Justice Chalmers, when you use the word new, N-E-W. Correct. It's new if an employee did not know of it. In other words, if they thought they could strike and had no information from anything they could read, that somehow they would not be paid, then it is N-E-W as to those employees, is it not? As to those employees, it would be in terms of them, but not in the larger sense of whether the policy itself existed. But doesn't the employee have the right to know before they take an action that directly penalizes their benefits? Well, they may, but that's not the argument that AFSCME made before the Board. The argument that AFSCME made in pursuit of the Board, and this is, the procedural history is outlined again in the Board's brief, was just, did they promulgate a new policy in June 2015? That's when they said the ULP occurred in June 2015. Not that maybe the ULP occurred at some point in the past when CMS adopted this policy but failed to adequately publicize it. Is there a definition of the word N-E-W, new, under the Labor Practices Act? In other words, can it be new to the AFSCME employees even though it preexisted? Is there a definition you can tell me? No, not the word new, but I think the claim there would be a failure to notify. It would be that, and the failure to notify would have occurred back whenever the policy was promulgated. And isn't that what AFSCME's claiming? No, they're claiming that they issued a new policy, that this was a brand new policy in June 2015. That's what they argued before the Board, and that's why that's all the Board considered. The Board, I mean, when you look at the Board's decision, the Board didn't talk about, you know, did employees get adequate notice of this policy when it was implemented at some point in the past? The Board never even considered that issue because as was presented to the Board at that time, it was what did, in June 2015, CMS promulgate a new policy? And did they then violate the act by not negotiating over it? And so that's all that the Board talked about. And the Board can't be held to abuse its discretion for not issuing a complaint on a theory that was never argued before the Board. I mean, it's a similar theory, I understand. But isn't it a new policy with respect to AFSCME? I mean, it could be classified that it is newly found information to AFSCME's members. What was the bargaining unit at Northern? I don't believe, I'm not sure of the record. They weren't represented by AFSCME. The Board recognized that in its decision. So it had never been applied to AFSCME? There were no others that it had, correct. So why isn't that a new policy? Well, I mean, the distinction that we keep coming back to is, is it new in a general sense or new to these employees? In that, whether they knew about it or not. And as it was presented to the Board, the question was just whether it was a new policy. Not whether, not anything about, you know, did they fail to, did CMS fail to disclose it here or there? But if it's okay, can I turn to the jurisdictional question real quick? I know there's some supplemental briefing. Go ahead. But it came up, and without jurisdiction, you know, none of this really matters. Go ahead. And I'm going to do it quickly because I only have two more minutes before I, even so. But this Court has jurisdiction over the Board's orders, both in this case and the one that's being argued next. Because those orders are final administrative decisions and subject to review under the Administrative Review Law. Nobody is disputing that the decision meets the definition of a decision under the Administrative Review Law, which then allows for judicial review of the administrative decision. So you're not challenging standing? No, I think everybody agrees. And I don't think AFSCME is challenging standing, right? Right. Everybody agrees, I think, there is jurisdiction. But there is this, as you noted, there's the Howe decision, which has language that indicates that if a decision, if an administrative decision doesn't comply with the Open Meetings Act, then it is necessarily null and void. And if it's necessarily null and void, then there's nothing to review. But those, the Howe decision and Baldwin decision don't take into account, they don't discuss at all Section 3C of the Open Meetings Act. Let me ask you this. Yes. Do you agree that we have subject matter jurisdiction? Yes. Do you agree we have personal jurisdiction? Yes. Then we're done, aren't we? Okay. Because everything else can be waived, can't it? Right. Subject matter cannot be waived. Correct. But as long as we have, you agree we have subject matter jurisdiction? Yes. And we have personal jurisdiction, what else is there to discuss? Everything else can be waived. Right. It's just subject matter jurisdiction. And that's why I brought it up. Okay. Because even if we don't agree, you know, subject matter jurisdiction. Okay. Thank you. Okay. And then I will, unless you have any other questions, I'll leave the rest of my time to the Council. Thank you. All right. Council? Thank you, Your Honor. May it please the Court, my name is Jeffrey Fowler. Along with my partner, Mr. Lawrence Weiner, we represent the State of Illinois Department of Central Management Services. Your Honor, very briefly addressing the motion to remand this jurisdictional issue, I know it's going to be fully brief, but just to be clear on what our concern is, we likewise agree that this Court has jurisdiction. Our concern is that if this were somehow to get up to the Illinois Supreme Court, and the Supreme Court says there was no jurisdiction, that wouldn't be in anybody's interest, let alone the public interest, for the parties in the Court to have then wasted time addressing the substance of the case. That's why we raised this issue before, Your Honor, in the first place. With that said, I think that we can adequately address it in the briefs. I'd like to focus really on, because we agree fully that the Board properly exercised its discretion in determining that AFB did not present sufficient evidence to show that there was a violation of the law to require a hearing. We absolutely support that position, but I want to address a couple of specific things. Your Honor asked a question, and I think it is the best question that I've heard all day. If there was a complaint issued, what would the complaint say? The reason why that is such an excellent question is because we don't know. Your Honors can't determine that, because normally a complaint would issue based upon the allegations in the charge. The allegations in the charge here were that the State violated Section 10A2 of the Act, and then by implication Section 10A1. There's no allegations in the charge of an independent violation of 10A1, and there are no allegations whatsoever in the charge of a violation of 10A4, which would be the obligation to bargain. There's nothing about that whatsoever in the charge. Even when you go beyond that and look at what the nature of the investigation was, there's absolutely nothing in the investigation that put the Board or the employer on notice that the issue in this case was whether or not the policy was appropriately implemented in the first place sometime at least 11 years prior. The issue was whether there was a changed policy, and if there was, whether that policy was appropriate. If there was a complaint, that would be what the complaint would have to be, and the Board determined properly so that there is no basis for a charge on that argument because AFSCME had not presented it. How would AFSCME know about it if there's nothing out there other than prior to the FAQ? How would they even know to put that in a charge if you can't find it? I don't accept the premise that you can't find it. Where would it be? Tell me where they would have looked to see it. We have submitted as part of the record, as I recall, it's at pages 40 to 48 of the record, a list of codes. The list of codes are implemented by the employees who are involved in new payroll work. Excuse me, I don't mean to interrupt, but I know you have a short time. Where would an employee of AFSCME, if I want to know, if I go out on strike, am I going to have a problem with getting paid or with getting health insurance? Where would such an employee go to look? Not internally within your coding people. I want to know where an AFSCME employee would look so that the union can adequately make a charge. I mean, part of that could be the union looking at the benefits handbook and seeing it's not addressed. Is it in the benefits handbook? And seeing that it's not addressed and then asking the employer. Oh wait, so now we have to ask the employer. My question is an employee. So you put the burden on them now to ask? It's just, it's a very simple question. Tell us where, in making the charge, these folks could have found that there was a pre-existing policy. The shortest answer to that, Judge, is that's exactly the reason for the FAQ. That's exactly the reason why I want you to make it clear. Prior to that, they had no knowledge. There was nothing that they could have known prior to the FAQ. I don't agree that there's nothing they could have known. Okay, let me ask you. Okay, you're very good at words. I don't mean to be. I want to know where an employee, prior to the publication of the FAQ, could have looked to see if there was a pre-existing policy. They could have looked at the benefits handbook to see that it's not addressed there and then asked the question. So they would have assumed. No problem. Showing the codes. So they would have assumed by looking, no, that it's not addressed. Is it true that it's not addressed in the policy handbook? It is true that it's not addressed in the policy handbook. Other than the policy handbook, where would they have looked? Other than seeing that it's not addressed, then the recourse would be to look at the payroll codes or to ask somebody. Do they have access to payroll codes? I don't know the answer to that, Judge. So you don't know if they have access to the payroll codes. It's not in the benefit handbook. So, logically, wouldn't you assume that this is a new policy when you go to draft your complaint? I mean, it seems logical. Well, I think that there's two parts to it, Judge. One is when the complaint was drafted, even if that assumption was made, that's not the end of the story. The end of the story is that the rules at the Board absolutely allow amendments to the charge. During the entire course of this investigation, even when AFSCME became explicitly aware that it was the State's position that this was not a changed policy, AFSCME did not amend the charge. And did the State – I'm sorry to be taking up all the same – did the State provide AFSCME that information prior to the decision of the Board? It was certainly presented as part of the Executive Director's decision. I don't know whether it was exchanged prior to that, but it was known to AFSCME prior to the Board's final decision. Prior to the final decision? Yes, Judge. How was it known? I'm sorry, Judge? How was it known? What was the information AFSCME received that allowed them to know this was a preexisting policy? Judge, I know that there's communications between the investigator, the Board's investigator, and Mr. Jokic, who was representing the charge of the party. Likewise, there were communications with the employer saying, this is what they say, how do you respond to it? I believe that we quoted those in our brief, quoted the Board's communications back and forth. I'm pretty sure that the Board's communications to the Board's representative, Mr. Jokic, made it clear that this was the State's position. I understand that lawyers and investigators make positions, but I'm looking for some kind of substantive evidence that the union could have reasonably relied upon in amending their complaint. What documents, what is it that the State would have provided to AFSCME? Prior to the Executive Director's decision, I don't know definitively that the codes were shared with AFSCME. I know that they were shared with the Board agent, and my belief is that the Board agent then shared stuff with AFSCME. That's a belief. Just to make sure I understand, because this is very important to me. Prior to the final decision, AFSCME would have had no documentation they could have reasonably relied upon that proved this was a pre-existing policy. Is that statement correct? It is not correct. You said prior to the final decision, and we know that at that point, they had access to the codes, they had access to the arguments about what had happened at the University. Okay, so it was prior to which decision, the Executive Director's decision? I cannot present a record citation to you that shows that prior to the Executive Director's decision that they knew it. But then it goes from the Executive Director based on objections to the Board itself. And I know that AFSCME made those arguments or made the arguments about the policy and that they weren't sure that it was a true policy and that they weren't aware of it. But prior to that, they made that to the Board itself. Okay, so I can cut it off kind of at the Executive Directors, and then the arguments really get to start prior to the Board's decision. Yes, ma'am. Okay, thank you so much for bearing with me. Happy to do it. But one final point is even if all of those were true, the inherently destructive argument that the Board of Supreme made is absolutely on point. We made it clear in the brief that even if this was a statement, it was not inherently destructive because it's even a far less standard than the statements also in the FAQ. You're not going to be paid while you're in a strike. The statements that we have cited in the brief saying if you go on strike and it's an economic strike, you can be permanently replaced. Those kinds of statements are not inherently disruptive. Section 10C of the Act makes it clear that when the employer has a reasonable basis for believing that what it's communicating is in fact what the policy is, that's a protected statement. May I conclude? Yes, you can finish. The issues here are very clear as the Board found that as of 2015, the employer had a very reasonable basis for believing that this was the policy that was in effect and that communicating that policy did not violate Section 10C. We therefore ask that the Board's decision be appealed. Thank you, Counsel. Rebuttal. So with respect to what we knew and when we knew it, I can point you to the following in the record and explain how the Board process works. You file a charge. It's assigned to an investigator. The investigator contacts the people that filed the charge and says, what's the basis of this explained to me? Then the investigator, after they receive a thorough explanation, communicates that with the employer and gets a response. And if you look at the brief of the employer, page 12, there's a long history of the correspondence back and forth. And what isn't there is any correspondence from the investigator to the union that says, what do you know about these codes? So the first time that we know about the codes is when the Executive Director renders a decision. By that time, the Executive Director has considered the evidence and made a recommendation to the Board. At that point, the union can appeal the decision of the Executive Director, and that's what we did. We said it's got no basis in law. We don't know about these coding things. The only example they gave was at a university in a faculty strike in 2004. It was never communicated to us. Now, let me layer on top of that this point, and that is the only place where the benefit handbook discusses unpaid absence, which is what a strike is. It's an unpaid absence. It's protected under the law, but you're not working and you're not getting paid, is in the section that I quoted to you. And if you are on unpaid absence because you first got your supervisor for 10 days in a year, your insurance gets paid for. And if you're unpaid because you were sick and ran out of sick days and you had to be absent from work because you were still sick, your insurance gets paid for up to third. And the policy that they have put in place, even if they put it in place 10 years ago, discriminates against the protected absence due to a strike. And a reasonable employee would say, hey, that's there, and it undermines my ability to strike. And if that is the impact of the statement, then under the cases that they quote, that's a threat of reprisal. I don't think I've ever heard any hard answer or argument that if they told an employee, lose your pay for the whole pay period, if you strike one day or if you're out for any part of that pay period, that that is something we could do. I said I submit that it's no less the same if you're talking about such a key feature of your employment, such as insurance. And that's why we think there was a violation of 10A1 of the Act. And that's why we think there was a violation of 10A4 of the Act. What about their argument that your complaint is not adequate? Or that your charge is not adequate? The charge alleges a violation of Section 10A2 and a violation of Section 10A1. Section 10A1 deals with statements that a reasonable employee would believe constitute a threat. And I think that an allegation based on Section 10A1 is perfectly appropriate here. Section 10A2 deals with the situation where you discriminated against an employee because they've engaged in protected activity. And eventually the whole thing was, well, you haven't been on strike and you haven't been hurt, so you haven't been discriminated against yet. And I agree that that makes some sense. In the course of the investigation, I indicated to the investigator, well, there's a 10A4 theory here as well, or refusal to bargain. And that theory was presented to the State. The State had a chance to answer it. And the Executive Director explicitly discussed that theory in her decision, which was upheld as written by the Court. And so there can't be an argument that the situation here was that the State had no notice of what the argument was. It's very common. But the Executive Director explicitly said that even though it wasn't that, that it had been considered in her decision. That's right. That's right. And I will add, it's common practice, both before this agency and before other labor relations agencies, that you come in, you file a charge, and that at some point in time, when there's going to be a complaint issue, you amend the charge so that it reflects everything that happened in the investigation. It's like what happens in federal court when you amend pleadings that conform to the proof that's been submitted. And what happens in State court as well. And if a complaint is issued by the Board, you can still amend? Yes, you can amend all the way up until the time of hearing to conform with the evidence that you have put in. Now, you know, there will be statute of limitations issues if you want to add something that's a completely new theory. But aside from those issues, you know, I've amended complaints on an opening statement in a hearing. Thank you, Counsel. Thank you. We appreciate the briefs and arguments, Counsel. I think in this case, under advisement, we're going to take a short recess and then go into oral argument on 0229.